## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____
                                                    )
SOO LINE RAILROAD COMPANY                           )
   d/b/a Canadian Pacific Railway                  )
   120 South 6th Street                            )
   Minneapolis, MN 55402,                          )
                                                    )
              *Plaintiff,*            )
                                                    )
   v.                                              ) Civil Action No. _____
                                                    )
BROTHERHOOD OF LOCOMOTIVE ENGINEERS                 )
AND TRAINMEN                                        )
   Division of the Rail Conference of              )
   the International Brotherhood of Teamsters       )
   Standard Building                               )
   1370 Ontario Street                             )
   Cleveland, Ohio  44113,                         )
                                                    )
   and                                             )
                                                    )
UNITED TRANSPORTATION UNION                         )
   d/b/a Transportation Division of the           )
   International Association of Sheet Metal, Air,   )
   Rail and Transportation Workers                 )
   24950 Country Club Blvd., Suite 340             )
   North Olmsted, Ohio 44070,                      )
                                                    )
              *Defendants.*           )
_____)

## COMPLAINT

      1.     Plaintiff Soo Line Railroad Company d/b/a Canadian Pacific Railway

("Soo") brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202,

and the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq*.

      2.     This Complaint seeks a declaration of the parties' rights and obligations

under the RLA in connection with a dispute involving an interpretation of the parties' labor

agreements. The dispute has arisen out of the objections of defendants Brotherhood of Locomotive Engineers and Trainmen ("BLET") and United Transportation Union ("UTU") to Soo's intended operation of Soo trains, using Soo locomotive engineers and conductors, from Soo's terminal at Thief River Falls, Minnesota to Winnipeg, Manitoba. Soo seeks a declaration that the parties' dispute is subject exclusively to arbitration under the RLA and that BLET and UTU may not lawfully strike or engage in other economic self-help in connection with the dispute.

## PARTIES

3.      Plaintiff Soo is a corporation organized and existing under the laws of the State of Minnesota, with its principal offices located at 120 South 6th Street, Minneapolis, Minnesota 55402. Soo is a common carrier by railroad engaged in interstate commerce and is a "carrier" within the meaning of, and subject to, the RLA, 45 U.S.C. § 151 First, and the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101. Soo operates a railroad system in Illinois, Indiana, Michigan, Minnesota, North Dakota, and Wisconsin, under the trade name Canadian Pacific Railway, and conducts significant rail operations in this judicial district. Soo is a wholly owned subsidiary of Soo Line Corporation, which in turn is an indirect wholly owned subsidiary of Canadian Pacific Railway Company, a Canada corporation.

4.      Defendant BLET is an unincorporated labor organization with its principal offices located at 1370 Ontario Street, Cleveland, Ohio 44113. BLET is a "representative" of employees within the meaning of and subject to the RLA, 45 U.S.C. § 151 Sixth. At all times mentioned herein, BLET has represented, for purposes of collective bargaining under the RLA, persons employed by Soo in the "craft or class" of locomotive engineer. BLET holds itself out as a Division of the Rail Conference of the International Brotherhood of Teamsters.

5.      On Soo, BLET acts through General Committees of Adjustment, each headed by a General Chairman.  BLET, through its officials and officers, conducts its business and acts for its members and other employees it represents in this judicial district.

6.      Defendant UTU is an unincorporated labor organization with its principal offices located at 24950 Country Club Blvd., Suite 340, North Olmsted, Ohio 44070.  UTU is a "representative" of employees within the meaning of and subject to the RLA, 45 U.S.C. § 151 Sixth.  At all times mentioned herein, UTU has represented, for purposes of collective bargaining under the RLA, persons employed by Soo in, *inter alia,* the "craft or class" of conductor and the "craft or class" of trainmen.  UTU holds itself out as the Transportation Division of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART"), and does business as SMART-Transportation Division and SMART-UTU.

7.      On Soo, UTU acts through General Committees of Adjustment, each headed by a General Chairman.  UTU, through its officials and officers, conducts its business and acts for its members and other employees it represents in this judicial district.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331, because federal questions arising under the RLA are presented.  The RLA and the Declaratory Judgment Act authorize the relief requested.

9.      Venue is properly laid in this judicial district under 28 U.S.C. § 1391(b), as defendants BLET and UTU reside in this district.

## APPLICABLE STATUTORY FRAMEWORK

10.     Section 3 of the RLA, 45 U.S.C. § 153, prescribes mandatory and exclusive procedures for resolving disputes over the "interpretation or application" of existing labor

agreements concerning rates of pay, rules and working conditions; such disputes are referred to as "minor disputes." These procedures include mandatory arbitration before the National Railroad Adjustment Board, RLA § 3 First (i), 45 U.S.C. § 153 First (i), or, alternatively, before a special board of adjustment established by a carrier and a labor union under RLA § 3 Second, 45 U.S.C. § 153 Second.

11.     As a matter of law, when a railroad contends that its action is based on an interpretation of its existing collective bargaining agreements that is at least arguably justified -- that is, not "obviously insubstantial" or "frivolous" -- the dispute is a "minor dispute," subject to resolution exclusively in arbitration under RLA § 3, and strikes or other forms of self-help are not permitted.

12.     Pending resolution of a dispute that falls within the exclusive jurisdiction of a railroad adjustment board, a railroad is entitled as a matter of law to continue to apply its interpretation of the labor agreement under which the dispute has arisen, unless and until the dispute is resolved against the railroad's interpretation by an RLA § 3 arbitration board.

13.     It is unlawful for a union to engage in a strike or other coercive self-help over a dispute that is governed by RLA § 3.

14.     Disputes over changes to the terms of existing railroad labor agreements concerning rates of pay rules and working conditions (or the creation of new labor agreements) are known as "major disputes." Such disputes are resolved through different RLA procedures. A party seeking to modify a labor agreement must serve a bargaining notice under 45 U.S.C. § 156 and then engage in an exhaustive process of bargaining, mediation, and voluntary arbitration, as set forth in §§ 5 First, 6, and 10 of the RLA, 45 U.S.C. §§ 155 First, 156, and 160; see RLA §2 Seventh, 45 U.S.C § 152 Seventh. Throughout the entire process, unions and

railroads must maintain the status quo. Only after the process is exhausted, if no agreement is reached, may the parties resort to economic self-help in an effort to enforce their bargaining demands.

15.     A district court has jurisdiction to determine if a dispute between a railroad and a union is a "minor dispute" or a "major dispute."

16.     Section 2, First of the RLA, 45 U.S.C. § 152 First, imposes a duty on unions and railroads "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."

## EVENTS REQUIRING RELIEF

17.     Soo's trains are generally crewed by two employees:  a locomotive engineer, represented by BLET, who operates the locomotive controls; and a conductor, represented by UTU, who supervises safe operation and administration of the train and performs services elsewhere in the train and on the ground.

18.     Soo and BLET are parties to a labor agreement that prescribes the rates of pay, rules, and working conditions of Soo locomotive engineers, revised effective March 7, 2011, and subsequently modified.  Soo and BLET are also parties to other agreements, including, *inter alia*, an Arbitrated Memorandum of Agreement, imposed by Arbitration Board No. 585. (These agreements are collectively referred to herein as "the Soo/BLET Agreements.")

19.     Soo and UTU are parties to a General Labor Agreement that prescribes the rates of pay, rules, and working conditions of Soo conductors, among other employees (effective

2003). Soo and UTU are also parties to other agreements, including, *inter alia*, a Memorandum of Agreement, effective 2004. (These agreements are collectively referred to herein as "the Soo/UTU Agreements.")

20. Under the Soo/BLET Agreements, Soo has the right to create a new position for locomotive engineers operating out of an existing home terminal, and to set a trip rate (a rate of pay) for the position. In the event that BLET disagrees as to what the trip rate should be for a new position, and if Soo and BLET cannot resolve their disagreement through negotiation, the Soo/BLET Agreements provide that the matter is to be resolved in arbitration.

21. Under the Soo/UTU Agreements, Soo has the right to create a new position for conductors operating out of an existing home terminal, and to set a trip rate for the position. In the event that UTU disagrees as to what the trip rate should be for the new position, and if Soo and UTU cannot resolve their disagreement through negotiation, the Soo/UTU Agreements provide that the matter is to be resolved in arbitration.

22. One type of engineer and conductor position is what is known as a through freight pool. An employee holding a position in such a pool does not have a fixed assignment on a specific, regularly scheduled train. Rather, engineers in the pool are available to fill engineer assignments, and conductors in the pool are available to fill conductor assignments, on trains that operate between locations that are supplied by the pool. Until the events giving rise to this civil action, for example, crews have been supplied by a through freight pool at Thief River Falls, MN, for Soo trains operating on Soo's line extending from Thief River Falls to Noyes, MN. A through freight pool operates on a "first in, first out" basis: the employee in the relevant craft who is at the top of the pool list works on the next train set to depart; when the employee returns

to the pool's home terminal at the conclusion of his run, he goes to the bottom of the pool list, and advances up the list as employees above him take their assignments.

23.     Positions are awarded by a bidding process.  With respect to through freight pool positions for both engineers and conductors, Soo follows the bidding provisions in the Soo/BLET Agreements, as they are the more restrictive.  Engineers bid to a position for a seven-day period.  A position, such as a position in a through freight pool providing crews for operations between two locations, is advertised by the posting of a job bulletin.  Bulletins are posted on a Monday, for a position to start the next Saturday.  Bids for posted positions must be submitted by the Wednesday after the posting.  Employees are awarded positions in accordance with their seniority order.

24.     Under the Soo/BLET Agreements and Soo/UTU Agreements, if a bulletined position is not filled through the bidding process, Soo may "force-assign" to the position the junior employee (the one with least seniority) in the pertinent seniority district who is not holding a position.

25.     Until now, Soo's trains have operated out of Soo's Thief River Falls terminal northward to Noyes, MN, which is located at the international border between Minnesota and Manitoba.  At Noyes, Soo has then handed off its traffic to Canadian Pacific Railway Company ("CPRC") for transport to destinations in Canada, including Winnipeg, Manitoba.  And, over the same route, Soo has handled rail traffic that it receives at Noyes from CPRC, heading south to Thief River Falls and other destinations in the United States.

26.     Soo trains operating both ways between Thief River Falls and Noyes have been crewed by Soo engineers and conductors holding positions in a through freight pool headquartered at Thief River Falls, a designated home terminal.

27.    Soo now intends to operate some of its trains, crewed by Soo engineers and conductors, over the full length of railroad from Thief River Falls to Winnipeg, Manitoba. Thief River Falls will remain the home terminal for these employees. In such operations, a Soo crew will operate a train from Thief River Falls to Winnipeg, where the crew will get the required rest, and then return by operating a train from Winnipeg to Thief River Falls.

28.    The distance from Thief River Falls to Noyes is approximately 79 route miles, and the distance from Noyes to Winnipeg is approximately 64 miles. Soo's operation of trains in direct service between these two locations is a more efficient use of Soo's rail equipment and manpower than was the previous service, and will permit faster movement of rail traffic and be advantageous to Soo's customers and CPRC's customers as well.

29.    On Friday, June 13, 2014, Soo informed representatives of BLET and UTU, in a joint telephone conference, of its intention to post a job bulletin on Monday, June 16, 2014, that will create a new through freight pool at the Thief River Falls home terminal covering operations between Thief River Falls and Winnipeg, and return. The job bulletin would give the advance notice required under the labor agreements, specifying that the start of the new pool service will be effective on Saturday, June 21, 2014.

30.    The bulletined through freight pool covering operations between Thief River Falls and Winnipeg will consist of three engineer positions and three conductor positions. Bids by engineers for a position in this pool for the seven-day period beginning June 21, 2014 must be made by Wednesday, June 18, 2014. Conductors exercise their seniority to take positions when they go into effect.

31.     By notice given in the same bulletin, posted June 16, 2014, Soo will reduce the number of positions in the Thief River Falls-to-Noyes through freight pool by three engineer positions and three conductor positions.

32.     There are currently 22 active Soo engineers and 22 active Soo conductors at Thief River Falls.  If the positions in the new pool covering operations between Thief River Falls and Winnipeg are not filled by employee bids, Soo plans to "force-assign" to those positions employees at Thief River Falls who are not holding positions, in reverse seniority order, in accordance with the governing labor agreements.

33.     On June 13, 2014, in addition to informing BLET and UTU of its intention to extend operations from its Thief River Falls home terminal to Winnipeg, Soo informed each union of the trip rate established for the service in accordance with the applicable labor agreements.

34.      UTU has objected to Soo's creating a through freight pool covering operations between Thief River Falls and Winnipeg.  UTU takes the position that Soo's action is not authorized by its collective bargaining agreements with UTU.  UTU contends that creating through freight pool service between Thief River Falls and Winnipeg would amount to a unilateral change in the working conditions of UTU-represented employees that is prohibited by the RLA, and that if Soo wants to create a through freight pool covering operations between Thief River Falls and Winnipeg, Soo must follow the RLA "major dispute" process and bargain with UTU over adding provisions to the labor agreements that would authorize such action.  On information and belief, BLET similarly takes the position that Soo does not have the right to create a through freight pool covering operations between Thief River Falls and Winnipeg under

Soo's collective bargaining agreements with BLET, but would have to bargain with BLET to obtain that right.

35.     Soo's position is that it already has the right under its existing collective bargaining agreements with BLET and UTU to create the contested through freight pool.

36.     The job bulletining and related provisions in the Soo/BLET Agreements permit Soo to create a through freight pool for locomotive engineers operating Soo trains between Thief River Falls and Winnipeg, with Thief River Falls as the home terminal.

37.     The Soo/BLET Agreements do not contain any provision that would prevent Soo from extending the previously existing pool service out of the Thief River Falls home terminal so that the pool service extends to Winnipeg rather than only to Noyes.

38.     The job bulletining and related provisions in the Soo/UTU Agreements permit Soo to create a through freight pool for conductors operating Soo trains between Thief River Falls and Winnipeg, with Thief River Falls as the home terminal

39.     The Soo/UTU Agreements do not contain any provision that would prevent Soo from extending the previously existing pool service out of the Thief River Falls home terminal so that the pool service extends to Winnipeg rather than only to Noyes.

## CLAIM FOR RELIEF

40.     Soo and BLET have a dispute over Soo's right to create a through freight pool for locomotive engineers, covering operations between Thief River Falls and Winnipeg and return.  This dispute is a dispute over the interpretation or application of the Soo/BLET Agreements and is therefore subject to resolution exclusively under RLA § 3, 45 U.S.C. § 153.

41.     Soo and UTU have a dispute over Soo's right to create a through freight pool for conductors, covering operations between Thief River Falls and Winnipeg and return.

This dispute is a dispute over the interpretation or application of the Soo/UTU Agreements and is therefore subject to resolution exclusively under RLA § 3, 45 U.S.C. § 153

42.     Soo's position is that provisions in its labor agreements with BLET and UTU authorize Soo to create a through freight pool, for locomotive engineers and conductors, respectively, covering operations between Thief River Falls and Winnipeg and return, with Thief River Falls as the employees' home terminal.  There are no provisions in either Soo's agreements with BLET or its agreements with UTU that forbid Soo to take such actions.

43.     BLET and UTU interpret their labor agreements differently and take the position that those agreements bar Soo from creating a through freight pool covering operations between Thief River Falls to Winnipeg and return.

44.     Soo's position -- that it has the right under its labor agreements with BLET and UTU to create a through freight pool for locomotive engineers and conductors, covering operations between Thief River Falls and Winnipeg and return -- is founded on an interpretation of those agreements that is at least arguably justified. The dispute is therefore an RLA "minor dispute," subject to mandatory arbitration under RLA § 3.

45.     Soo is ready, willing, and able to submit its disputes with BLET and UTU to resolution through the RLA § 3 process, including arbitration.

46.     Under RLA § 3, Soo is entitled to proceed in accordance with its interpretation of its labor agreements with BLET and UTU unless and until its interpretation is rejected in arbitration under the RLA.  The contractual disputes in this case have not been resolved in arbitration.

47.     Soo is entitled to a declaration that its disputes with defendants BLET and UTU over Soo's creating through freight pool service between Thief River Falls and Winnipeg

and return are disputes over the interpretation or application of existing labor agreements, which are subject to resolution exclusively in arbitration under RLA § 3, and that a strike or other economic self-help by BLET or UTU over these disputes would be unlawful.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Soo requests that judgment be entered in its favor and against defendants BLET and UTU, and respectfully prays that the Court:

(1) Grant judgment declaring that the dispute between Soo and BLET and the dispute between Soo and UTU over Soo's right to create a through freight pool for, respectively, locomotive engineers and conductors, covering operations between Thief River Falls, Minnesota and Winnipeg, Manitoba, and return, are disputes over the interpretation or application of existing labor agreements between Soo and the respective defendant unions; and that these disputes are within the exclusive jurisdiction of the National Railroad Adjustment Board or privately established adjustment boards, as provided in RLA § 3, 45 U.S.C. § 153;

(2) Grant judgment declaring that BLET and UTU may not engage in a strike or other economic self-help in connection with the disputes over Soo's right to create a through freight pool covering operations between Thief River Falls and Winnipeg and return, and that any such strike or other economic self-help would be unlawful;

(3) Award Soo its costs and expenses, including attorneys' fees, incurred in this proceeding; and

(4) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


/s/ James S. Whitehead
James S. Whitehead
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7703

Jeffrey S. Berlin
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8178

Charles W. Webster
Senior Counsel-U.S.
Soo Line Railroad Company
  d/b/a Canadian Pacific Railway
11306 Franklin Ave.
Franklin Park, Illinois 60131
(630) 860-4161

*Attorneys for Plaintiff Soo Line Railroad*
*Company d/b/a Canadian Pacific Railway*